## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

REHAB ELDEEB, as trustee for the next of kin
of FAHMY ELDEEB, deceased,

                Plaintiff,

      – against –

DELTA AIR LINES, INC., a corporation, and
SOCIÉTÉ AIR FRANCE, S.A. d/b/a AIR
FRANCE, a corporation,

                Defendants.

Civil File No. 18-01128-DSD-TNL

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' JOINT MOTION TO DISMISS

# Table of Contents

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................4

POINT I THE CASE SHOULD BE DISMISSED ON THE GROUND OF *FORUM NON CONVENIENS* ................................................................................4

    A.    FRANCE IS AN ADEQUATE AND AVAILABLE ALTERNATIVE FORUM ...............................6

    B.    THE PRIVATE INTEREST FACTORS HEAVILY FAVOR DISMISSAL .......................8

    C.    THE PUBLIC INTEREST FACTORS ALSO MILITATE IN FAVOR OF DISMISSAL..................13

    D.    PLAINTIFF CAN RE-FILE HER CLAIMS IN FRANCE .........................................16

POINT II THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO NAME ADP AS A NECESSARY PARTY ...................................16

POINT III THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER THE MONTREAL CONVENTION ............................19

    A.    PLAINTIFF HAS FAILED TO PLEAD ARTICLE 17 "ACCIDENT".........................20

        1.    Plaintiff Does Not And Cannot Demonstrate An "Accident" Occurred ...................21

        2.    Plaintiff's Claim, If Any, Is One For Passenger Delay Under Article 19 .................25

    B.    TO THE EXTENT ALLEGED, PLAINTIFF'S ARTICLE 19 BAGGAGE CLAIM MUST BE DISMISSED ..............................................................................26

CONCLUSION......................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Crash over the Mid-Atlantic on June 1, 2009,*
  760 F. Supp. 2d 832 (N.D. Cal. 2010) ..........................................................................5, 6, 8, 9

*Air France v. Saks,*
  470 U.S. 392 (1985)...............................................................................................20, 21, 22, 24

*In re Aircrash at Little Rock, Ark., on June 1, 1999 (Lloyd),*
  291 F.3d 503 (8th Cir. 2002), *cert. denied,* 537 U.S. 974 (2002)............................................23

*Aldana v. Del Monte Fresh Produce N.A., Inc.,*
  578 F.3d 1283 (11th Cir. 2009) .................................................................................................6

*Alfadda v. Fenn,*
  159 F.3d 41 (2d Cir. 1998).........................................................................................................7

*In re Apple, Inc.,*
  602 F.3d 909 (8th Cir. 2010) .................................................................................................9, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................................................22

*Bassam v. Am. Airlines,*
  287 Fed. Appx. 309, 2008 WL 2725228 (5th Cir. 2008)..........................................................26

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................................................24

*Bobian v. CSA Czech Airlines,*
  232 F. Supp. 2d 319 (D. N.J. 2002), *aff'd,* 93 Fed. Appx. 406 (3d Cir. 2004).......................23

*Booker v. BWIA West Indies Airways Ltd.,*
  No 06-cv-2146, 2007 WL 1351927 (E.D.N.Y. May 8, 2007)...........................................22, 27

*Callahan v. United Airlines, Inc., et al.,*
  No. 16-cv-680, 2017 WL 4324703 (W.D. Ok. Sept. 28, 2017)................................................22

*Campbell v. Air Jamaica Ltd.,*
  760 F.3d 1165 (11th Cir. 2014) .........................................................................................21, 25

*Cook v. Champion Shipping AS,*
  463 Fed. Appx. 626 (9th Cir. 2011).......................................................................................6, 9

*Cush v. BWIA Int'l Airways, Ltd.*,
　175 F. Supp. 2d 483 (E.D.N.Y. 2001) ...........................................................22, 24

*Da Rocha v. Bell Helicopter Textron*,
　451 F. Supp. 2d 1318 (S.D. Fla. 2006) ................................................................5

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014)............................................................................................18

*De Melo v. Lederle Laboratories*,
　801 F.2d 1058 (8th Cir. 1986) ..........................................................4, 6, 7, 11

*Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc.*,
　149 F.R.D. 185 (1993) ....................................................................................18, 19

*Eastern Airlines, Inc. v. Floyd*,
　499 U.S. 530 (1991)..............................................................................................21

*Ehrlich v. Am. Airlines, Inc.*,
　360 F.3d 366 (2d Cir. 2004).........................................................................19, 23

*El Al Israel Airlines, Ltd. v. Tseng*,
　525 U.S. 155 (1999)...................................................................................20, 21, 24

*Esheva v. Siberia Airlines*,
　499 F. Supp. 2d 493 ........................................................................................5, 13

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
　623 F.3d 147 (3d Cir. 2010)...................................................................................7

*Fraizer v. St. Jude Medical, Inc.*,
　609 F. Supp. 1129 (D. Minn. 1985)....................................................................11

*Gambra v. Int'l Lease Finance Corp.*,
　377 F. Supp. 2d 810 (C.D. Cal. 2005) ..................................................................8

*Gschwind v. Cessna Aircraft Co.*,
　161 F.3d 602 (10th Cir. 1998) ...............................................................................7

*Guimond v. Wyndham Hotels & Resorts*,
　No. 95-cv-0428, 1996 WL 281959 (S.D.N.Y. May 29, 1996) ................................14

*Langadinos v. Am. Airlines, Inc.*,
　199 F.3d 68 (1st Cir. 2000).................................................................................22

*Lee v. Am. Airlines, Inc.*,
　335 F.3d 386 (5th Cir. 2004) ..............................................................................25

*Leon v. Millon Air, Inc.*,
    251 F.3d 1305 (11th Cir. 2001) ....................................................................................6, 16

*Longo v. Air France*,
    Civ. No. 95-0292, 1996 WL 866124 (S.D.N.Y. July 25, 1996) ...............................................23

*Love v. Delta Air Lines*,
    310 F.3d 1347 (11th Cir. 2002) .............................................................................................20

*Loya v. Starwood Hotels & Resorts World-Wide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) (dismissing U.S. widow's wrongful death claims
    resulting from a scuba diving accident off the coast of Mexico)...............................................9

*Magnin v. Teledyne Cont'l Motors*,
    91 F.3d 1424 (11th Cir. 1996) .............................................................................8, 12, 13, 15

*Maxwell v. Aer Lingus Ltd.*,
    122 F. Supp. 2d 210 (D. Mass. 2000) ..................................................................................21

*McLane v. Marriott Int'l, Inc.*,
    960 F. Supp. 2d 1351 (S.D. Fla. 2013) .................................................................................10

*Mizyed v. Delta Airlines, Inc.*,
    No. 12-cv-382, 2012 WL 1672810 (E.D. La. 2012)..........................................................25, 26

*Molefe v. KLM Royal Dutch Airlines*,
    602 F.Supp.2d 485 (S.D.N.Y. 2009).....................................................................................26

*Muraco v. Sandals Resorts Int'l*,
    No. 14-cv-4896, 2015 WL 9462103 (E.D.N.Y. Dec. 8, 2015).........................................10, 14

*Naqvi v. Turkish Airlines, Inc.*,
    80 F. Supp. 3d 234 (D.D.C. 2015)........................................................................................22

*Omega Demolition Corp. v. Hays Grp., Inc.*,
    306 F.R.D. 225 (D. Minn. 2015)...........................................................................................19

*Paulownia Plantations De Panama Corp. v. Rajamannan, et al*.,
    793 N.W.2d 128 (Minn. 2009)................................................................................................4

*Perez-Lang v. Corporacion de Hoteles, S.A.*,
    575 F. Supp. 2d 1345 (S.D. Fla. 2008) .................................................................................11

*Philipps v. Talty*,
    555 F. Supp. 2d 265 (D.N.H. 2008).......................................................................................10

*Pierre-Louis v. Newvac Corp.*,
    584 F.3d 1052 (11th Cir. 2009) ..............................................................................................5

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)................................................................................ *passim*

*Polanco v. HB Fuller Co.*,
    941 F. Supp. 1512 (D. Minn. 2009)........................................................ *passim*

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)....................................................................9, 15

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
    138 F.3d 65 (2d. Cir. 1998)........................................................................4

*Satz v. McDonnell Douglas Corp.*,
    244 F. 3d 1279 (11th Cir. 2001) .................................................................5

*Seales v. Panamanian Aviation Co., Ltd.*,
    No. 07-cv-2901, 2009 WL 395821 (E.D.N.Y. Feb. 18, 2009) ...................5

*Shotz v. Am. Airlines, Inc.*,
    323 F. Supp. 2d 1315 (S.D. Fla. 2004), *aff'd*, 420 F.3d 1332 (11th Cir. 2005)......................20

*Tazoe v. Tam Linhas Aereas*,
    No. 07-cv-21941, 2009 WL 3232908 (S.D. Fla. Aug. 24, 2009) ................5, 11, 12

*Terrafranca v. Virgin Atlantic Airways, Ltd.*,
    151 F.3d 108 (3d Cir. 1998)......................................................................23

*In re Vioxx Products Liability Litigation*,
    448 F. Supp. 2d 741 (E.D. La. 2006).........................................................8

*Walden v. Fiore*,
    134 S.Ct. 1115 (2014)...............................................................................18

## Statutes and Other Authorities

Air Carrier Access Act, 49 U.S.C. § 41705 ...............................................20

Convention for the Unification of Certain Rules for the International Carriage by
    Air, concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty
    Doc. No. 106-45, 1999 WL 33292734S. Treaty Doc. No. 106-45 ................. *passim*

Fed. Rule Civ. P. 12(b)(6) and (7) ...............................................................1

Fed. Rule Civ. P. 19 ................................................................. *passim*

Regulation (EC) No 1107/2006 of the European Parliament and of the Council of
    5 July 2016 concerning the rights of disabled persons and persons with
    reduced mobility when travelling by air ........................................ *supra*

Defendants Delta Air Lines, Inc. ("Delta") and Société Air France ("Air France") move this Court to enter an order dismissing the Amended Complaint: (1) on *forum non conveniens* grounds because France is a more convenient forum for this litigation, which arises from an alleged incident at Charles de Gaulle Airport in Paris, France involving conduct of two French entities; and, in the alternative (2) pursuant to Rule 12(b)(7) because Plaintiff has failed to name Aéroports de Paris ("ADP"), a necessary and indispensable party under Rule 19; and (3) pursuant to Rule 12(b)(6) because Plaintiff has failed to state a claim for relief under (i) under Article 17(1) of the Montreal Convention and (ii) under Article 19 of the Montreal Convention.

## <u>INTRODUCTION</u>

Plaintiff brought a claim on behalf of Decedent, whose alleged "home" was in Egypt, against Delta, an Atlanta-based carrier, and Air France, a French carrier, for the alleged delay that occurred as a result of ADP's alleged failure to provide wheelchair assistance at Charles de Gaulle Airport (CDG) in Paris, France on May 10, 2016. *See* Dkt. Enty No. 7 at ¶ 2; *see also* Declaration of Maylis Casati-Ollier, executed on September 6, 2018 ("Casati-Ollier  Declaration") at ¶ 9; *see also* Declaration of Sarah G. Passeri, executed on September 10, 2018 ("Passeri Declaration"), Ex. A.  Plaintiff has filed two complaints: (1) with the Department of Transportation (the "DOT Complaint"), and (2) with this Court.  *See* Passeri Declaration at ¶ 2, Ex. A.

Plaintiff admits that Decedent, accompanied by his wife, was "flying home to live out his last days because he was diagnosed with pancreatic cancer." *Id.* at Ex. A.  Plaintiff alleges that Decedent made a one-way reservation from Minneapolis, Minnesota (MSP) to

1

Cairo, Egypt (CAI) with an agreed stop in Paris, France (CDG). *Id.* at Ex. B. Decedent allegedly requested wheelchair assistance to help him transfer in between flights. *See* Dkt. Enty No. 7 at ¶ 6. Upon arriving at CDG in Paris, Decedent was allegedly assisted off of the aircraft with a wheelchair and placed in the seating area at the arrival gate. *See id.* at ¶ 8. Decedent allegedly waited in the gate area with his wife for further wheelchair assistance to transfer from Air France Flight 508 (MSP/CDG) to his connecting flight to Egypt. *See id.* at ¶¶ 7, 8. The wheelchair assistance was allegedly delayed and Decedent missed his connecting flight. *See id.* at ¶ 9. Air France rebooked Decedent and his wife on the next departing flight to Cairo, Egypt. *See* Passeri Declaration at ¶ 3. This flight was operated by Egypt Air and left the same day— nine hours after Decedent's scheduled connecting flight. *See id.*; *see also* Dkt. Enty No. 7 at ¶ 9. According to the Amended Complaint, the alleged 12 hour delay at CDG (nine hours longer than the initially scheduled time between flights) "resulted in the rapid deterioration of plaintiff's decedent's already weakened physical and mental condition." *See id.* Upon arriving in Cairo, Decedent learned that his checked bag—which contained medications—was not available. The alleged separation of Decedent and his baggage also allegedly contributed to the deterioration of his physical and mental condition *See id.* Decedent died 26 days following his arrival in Egypt.

Plaintiff's claims arise from events that occurred in Paris, France—the site of the alleged failure to provide a wheelchair and delay. Moreover, the alleged negligence centers around the conduct of employees of ADP—the managing body of CDG that is responsible for assisting passengers with reduced mobility. *See* Casati-Ollier Declaration at ¶ 13; *see also* Parliament and Council Regulation 1107/2006, art. 8, 2006 O.J. (L 204) (EC) ("[t]he

managing body of an airport shall be responsible for ensuring the provision of [mobility] assistance") (attached as Exhibit A to the Casati-Ollier Declaration).   Upon information and belief, ADP contracts with another French company, Passerelle, to assist in its regulatory obligations.   *See id.* at ¶ 16.   Plaintiff failed to name the responsible party— ADP or Passerelle—and chose instead to name (i) Delta, whose only connection to this litigation is that it allegedly contracted with Decedent, for a one-way ticket to his home in Egypt, and (ii) Air France, the French airline that provided the transportation.   Given these facts, the action should be dismissed on *forum non conveniens* grounds because it is more appropriately brought in France.

Alternatively, even if not dismissed on *forum non conveniens* grounds, the Court should dismiss the action for Plaintiff's failure to name a necessary party—ADP.   As set forth above, ADP—not Air France or Delta—is responsible for providing wheelchair assistance to passengers.   *See* Casati-Ollier Declaration at ¶ 13.   Air France properly requested assistance on behalf of Decedent; ADP allegedly failed to timely provide it.   *See id.* at ¶¶ 14-15.   ADP is a necessary and indispensable party pursuant to Fed. R. Civ. P. 19; it would be extremely prejudicial to Defendants to proceed in this action without ADP.

Additionally, Plaintiff has failed to state a claim for relief under Article 17 of the Montreal Convention,[1] which requires a showing of an "accident" causing "death or bodily injury" on board the aircraft or in the course of any of the operations  of embarking or

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (hereinafter "Montreal Convention").

disembarking.  MC, Art. 17(1).  Plaintiff has not and cannot assert a claim for "bodily injury".  Plaintiff's claim, if any, is for passenger delay under Article 19.  Additionally, to the extent alleged, any separate claim for delayed baggage must dismissed or, in the alternative, limited to 1,131 Special Drawing Rights (SDRs) in accordance with Article 22(2) of the Convention.

## ARGUMENT

### POINT I
### THE CASE SHOULD BE DISMISSED
### ON THE GROUND OF *FORUM NON CONVENIENS*

The *forum non conveniens* doctrine permits a court to dismiss a claim even if the court is a permissible venue with proper jurisdiction if "the litigation can more appropriately be conducted in a foreign tribunal."  *De Melo v. Lederle Laboratories*, 801 F.2d 1058, 1060-61 (8th Cir. 1986) (citation omitted); *see also PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d. Cir. 1998).  Dismissal on the ground of *forum non conveniens* is appropriate when (1) there is an adequate and available alternative forum and (2) the relevant private and public interest factors weigh in favor of dismissal.  *See De Melo,* 801 F.2d at 1060; *Paulownia Plantations De Panama Corp. v. Rajamannan, et al.*, 793 N.W.2d 128, 133, 137 (Min. 2009).  The relevant private interests include the relative ease of access to evidence in the competing fora, the location of the witnesses and ability to obtain compulsory process over them, the cost of obtaining evidence, and other factors that might shorten the trial or make it less expensive.  *See Polanco v. HB Fuller Co.*, 941 F. Supp. 1512, 1527 (D. Minn. 2009).  The relevant public interests include the interest of any foreign nation in having the dispute litigated in its own courts, the value of

having local controversies litigated locally, and the familiarity of the courts with governing law. *Id.* at 1528.

It cannot be disputed that France provides an adequate and available alternative forum; Defendants and ADP and its subcontractor, are subject to jurisdiction in France, and adequate remedies are available under French law.   Additionally, the private and public interest factors weigh heavily in favor of dismissal to France.   This action is immutably French: it stems from alleged negligence of French employees of a French airport authority and its French subcontractor in France in connection with a flight operated by a French airline.   The vast majority of the liability witnesses and documents are located in France, where ADP, its subcontractor Passerelle, the operating airline, and any potential witnesses are based.   *See* Casati-Ollier Decl. ¶¶ 18-19.   As numerous courts have determined, cases arising from international travel with events occurring on foreign soil and involving foreign airlines are compelling cases for *forum non conveniens* dismissal.[2]   This is true even when

---

[2] *See, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981); *Pierre-Louis v. Newvac Corp.,* 584 F.3d 1052, 1056 (11th Cir. 2009) (affirming *forum non conveniens* dismissal of an air crash case to Martinique, France); *Satz v. McDonnell Douglas Corp.*, 244 F. 3d 1279 (11th Cir. 2001) (Affirming Argentina as an adequate alternative forum for action concerning Argentine airline's accident in Uruguay); *Tazoe v. Tam Linhas Aereas,* No. 07-cv-21941, 2009 WL 3232908 at *7 (S.D. Fla. Aug. 24, 2009)(dismissing cases involving a Brazilian airline which crashed in Brazil); *Da Rocha v. Bell Helicopter Textron*, 451 F. Supp. 2d 1318, 1325 (S.D. Fla. 2006) ), *rev'd in part on other grounds*, 631 F.3d 1321 (11th Cir. 2001)   (Brazil was better forum for lawsuits arising from helicopter accident in Brazil involving Brazilian air taxi service and passengers) *In re Air Crash over the Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010) (finding private and public interest factors weighed in favor of France); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (dismissing case against Russian airline for accident occurring in Russia); *Seales v. Panamanian Aviation Co., Ltd.*, No. 07-cv-2901, 2009 WL 395821 (E.D.N.Y. Feb. 18, 2009) (dismissing claim against foreign airline for *forum non conveniens*).

the plaintiff is a United States citizen or a lawful resident of the United States.  *See, e.g.,*
*Cook v. Champion Shipping AS*, 463 Fed. Appx. 626 (9th Cir. 2011) (affirming dismissal
of a U.S. plaintiff's personal injury claims arising from in a vessel collision in the waters
of Taiwan); *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1293-94 (11th
Cir. 2009) (claims brought by lawful residents of the United States appropriately dismissed
on *forum non conveniens grounds* where actions complained of occurred in Guatemala);
*In re Air Crash Over the Mid-Atlantic on June 1, 2009,* 760 F. Supp. 2d. 832, 842 (N.D.
Cal. 2010), *reconsideration denied by*, 792 F. Supp. 2d 1090 (N.D. Cal. 2011) (dismissing
claims of U.S. children brought on behalf of their parents (both U.S. citizens) stemming
from accident over the mid-Atlantic).

Accordingly, this action should be dismissed without prejudice to Plaintiff refiling
her case in France.

## A.   France Is An Adequate And Available Alternative Forum

A party moving to dismiss on *forum non conveniens* must demonstrate that an
alternative and adequate forum is available for the lawsuit.  *See De Melo,* 801 F.2d at
1061-62 (adopting analysis set forth in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981)).

*1. France Is An Alternative Available Forum.*  An alternative forum is "available"
when the foreign court can assert jurisdiction over the litigation.  *Leon v. Millon Air, Inc.*,
251 F.3d 1305, 1311 (11th Cir. 2001).  The availability requirement is ordinarily satisfied
"when the defendant is 'amenable to process' in the other jurisdiction."  *Piper,* 454 U.S. at
255 n.22.  As explained in the Declaration of Maylis Casati-Ollier, a French attorney with
expertise in aviation law and French civil law, the courts in France would have jurisdiction

6

over the subject matter of this action.  *See id.* at ¶¶ 18-19; 41.  Defendants' liability is governed by the Montreal Convention.  *See id.* at ¶ 33.  Pursuant to that treaty's terms and conditions, Plaintiff may sue Delta (the contracting carrier) in the place of domicile and principal place of business of the codeshare, actual carrier, Air France.  *See id.* at ¶ 34; MC, Art. 46.  Here, Air France's *only* domicile and principal place of business is in Tremblay-en-France, in the territorial jurisdiction of the courts of Bobigny.  *See id.* at ¶ 18.  Likewise, ADP is organized under the laws of France and maintains its principal place of business in Tremblay-en-France.  *See id.* at ¶ 19.  Likewise, ADP's subcontractor, Passerelle, is organized under the laws of France and maintains its principal place of business within the territorial jurisdiction of the courts of Bobigny.  *See id*.  Additionally, the limitations period is governed by the Montreal Convention and can be waived by Defendants.  *See* MC, Art. 29; *see also De Melo,* 801 F.2d at 1059-60 (noting a defendant's consent to jurisdiction is sufficient if the statute of limitations period has tolled).

> **2.  *France Is An Adequate Forum.***  An alternative forum need not mirror the U.S. court system, and is considered inadequate only if "the remedy provided by an alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."  *Piper*, 454 U.S. at 254.  Several courts confronted with a motion to dismiss on the basis of *forum non conveniens* have concluded that the court system in France provides an adequate remedy for similar wrongful death and personal injury claims. *See e.g., Solari v. Goodyear Tire & Rubber Co.*, 654 App'x 763, 767 (6th Cir. 2016); *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 161 (3d Cir. 2010); *Alfadda v. Fenn*, 159 F.3d 41, 46-47 (2d Cir. 1998); *Gschwind v. Cessna Aircraft Co*., 161 F.3d 602, 606-07 (10th Cir.

1998); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *In re Air Crash Over the Mid-Atlantic on June 1, 2009,* 760 F. Supp. 2d. at 842; *In re Vioxx Products Liability Litigation*, 448 F. Supp. 2d 741, 746 (E.D. La. 2006); *Gambra v. Int'l Lease Finance Corp.*, 377 F. Supp. 2d 810, 817 (C.D. Cal. 2005).

French law provides a cause of action and recovery of damages in wrongful death and personal injury actions.  *See* Casati-Ollier Declaration.at ¶ 37.  Plaintiff may recover pecuniary and non-pecuniary damages.  *Id*. at ¶¶ 38-39.  The French courts follow a code of civil procedure which sets forth litigation procedures and governs the burdens of proof on disputed facts and law and the presentation of evidence. *Id*. at ¶¶ 25-26.  The French courts can compel documents and testimony from parties and non-parties.  *Id*. at ¶ 26.  Oral and written evidence and arguments may be presented to the court.  *Id*. at ¶¶ 27-30.  Experts are appointed by the French court on technical and medical issues.  *Id*. at ¶ 31.  Appellate review is available.  *Id.* at ¶ 23.  Based on the foregoing, it cannot be disputed that France provides an adequate alternative forum.

**B.**     **The Private Interest Factors Heavily Favor Dismissal**

The second part of the *forum non conveniens* analysis requires a weighing of private and public interest factors.  The private interest factors include the relative ease of access to proof; the availability of compulsory process to secure the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper*, 454 U.S. at 241 n.6 (citation omitted). In  balancing the private interest factors, courts also examine

the convenience of the parties and the deference that should be afforded plaintiff's chosen forum.

> **1.**     ***Plaintiff's Forum Choice Is Entitled To Minimal Deference.***   At the outset, the Court must consider the appropriate level of deference to a plaintiff's choice of forum. *See Piper*, 454 U.S. at 255-56.   Here, Plaintiff has brought a claim on behalf of Decedent who was travelling on a one-way ticket to Egypt to live out his final days.   Plaintiff chose a U.S. forum despite that the incident alleged in the Amended Complaint and the subsequent death of Decedent occurred in France and Egypt, respectively.   *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003)   ("A court considering a motion for dismissal on the grounds of *forum non conveniens* does not assign 'talismanic significance to the citizenship or residence of the parties,' ... and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*.") (citations omitted); *see also In re Apple, Inc.,* 602 F.3d 909, 913 (8th Cir. 2010) (where "no relevant connection exists " between the parties, the dispute, and the forum, plaintiff's choice of forum is entitle to minimal weight in a §1404(a) determination).   Many courts in nearly identical circumstances have dismissed the claims of U.S. plaintiffs to the forum where the alleged injury, treatment, or investigation occurred.   *See, e.g., Cook*, 463 Fed. Appx. 627 (affirming dismissal of a U.S. plaintiff's personal injury claims arising from a vessel collision in the waters of Taiwan); *Loya v. Starwood Hotels & Resorts World-Wide, Inc.*, 583 F.3d 656 (9th Cir. 2009) (dismissing U.S. widow's wrongful death claims resulting from a scuba diving accident off the coast of Mexico); *Air Crash Over the Mid-Atlantic,* 760 F. Supp. 2d. at 842 (dismissing

claims brought against Air France by U.S. plaintiffs on behalf of U.S. decedents); *Muraco v. Sandals Resorts Int'l*, No. 14-cv-4896, 2015 WL 9462103, at *11 (E.D.N.Y. Dec. 8, 2015) (dismissing for *forum non conveniens* in favor of St. Lucia, place of injury); *Philipps v. Talty*, 555 F. Supp. 2d 265, 272-73 (D.N.H. 2008) (dismissing to St. Martin, location of car crash killing plaintiff); *McLane v. Marriott Int'l, Inc.*, 960 F. Supp. 2d 1351, 1362 (S.D. Fl. 2013) (dismissing to Costa Rica, where U. S. plaintiff's injury occurred).

As shown below, dismissal of Plaintiff's claim is undoubtedly appropriate here too.

**2.      *Accessibility To Proof In France Favors A French Forum.*** Because the alleged incident occurred in France and involved a French airport authority (ADP), its French subcontractor (Passerelle), and a French airline it is not surprising that "a large proportion of the relevant evidence" is located in France. *Piper*, 454 U.S. at 258. Extensive testimonial and documentary evidence is beyond this Court's subpoena power, including documents and witnesses relevant to the transfer of passengers between connecting flights in France, Air France (the actual carrier), ADP and its subcontractor Passerelle, and eyewitnesses. All liability evidence, including estimonial and documentary evidence from ADP and Passerelle, cannot be otherwise made available if the litigation remains in the United States. Damages evidence is also located in France or Egypt. There is no evidence that Plaintiff can reasonably point to within the United States.

Additionally, the configuration of this airport, the airport norms regarding transportation of wheelchair passengers, and the application of Parliament and Council Regulation 1107/2006 are highly relevant, if not dispositive, to the claims at issue. *See Piper*, 454 U.S. at 242 ("Trial would be aided by familiarity with Scottish topography");

*Tazoe,* 2009 WL 3232908 at *4 (the ability to view the location of the accident weighs in favor of dismissal where a significant part of the defense involves the location of the airport and the location, length, and condition of the runway); *Perez-Lang v. Corporacion de Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008) (visit to accident site may be "beneficial due to the nature of the allegations").

The Eighth Circuit has repeatedly dismissed cases for *forum non conveniens* when witnesses and documentary evidence are more accessible in another jurisdiction.  *See e.g.*, *De Melo*, 801 F.2d at 1064 (affirming *forum non conveniens* dismissal where relevant evidence of product manufacture, distribution, and marketing was located in Brazil); *In re Apple, Inc.,* 602 F.3d at 913 (granting motion to transfer under §1404(a) where there were no witnesses in the forum and no connection to the forum other than that defendant sells products there); *see also Polanco*, 941 F. Supp. at 1528 (in an action for wrongful death that occurred in Guatemala, it was more likely than not that unknown witnesses would be located in Guatemala, as opposed to the United States); *Fraizer v. St. Jude Medical, Inc.*, 609 F. Supp. 1129, 1131-32 (D. Minn. 1985) (finding that evidence of implantation procedure was located in Denmark favored dismissal despite the fact that the allegedly defective medical device was manufactured in Minnesota).

3. ***The Inability To Compel Attendance Of Unwilling Witnesses.***  None of the witnesses relevant to this action are located in Minnesota or the United States.  Instead, the vast majority are located in France, including individuals who allegedly witnessed the incident (including the good Samaritan referenced by Plaintiff in her DOT Compliant), the French airport authorities, the French airport and airline crewmembers who assisted

Decedent, cannot be compelled to appear in this Court.  Continued litigation in Minnesota would unfairly deprive the Defendants of evidence crucial to its defense that it is not responsible for Plaintiff's fall—ADP is the party responsible.  *See Magnin,* 91 F.3d at 1430 (unavailability of compulsory process to secure attendance of French witnesses supported dismissal); *Tazoe*, 2009 WL 3232908 at *4 (dismissal proper where the parties have greater access to sources of proof concerning potentially liable third parties in Brazil).  Neither Defendants nor this Court could compel ADP to participate in this litigation in Minnesota.  As set forth more fully below, ADP is the entity responsible for providing wheelchair assistance pursuant to Parliament and Council Regulation 1107/2006.  As such, ADP is a necessary and indispensable party to this litigation and Defendants will be severely prejudiced if forced to litigate this action without ADP.

*Khan v. Delta Airlines, Inc.*, is particularly instructive here.  No. 10-cv-2080, 2010 WL 3210717 (E.D.N.Y. Aug. 12, 2010).  In *Khan*, the Eastern District of New York dismissed a case on *forum non conveniens* grounds where plaintiff alleged a Montreal Convention claim against a U.S. airline for insufficient wheelchair services provided in Toronto, Canada.  *See id*. at *7.  The ticket was issued in New York and the airline failed to transfer the wheelchair request in New York.  *See id*.  Nevertheless, the district court found that the actual dispute over the failure of the wheelchair to arrive and subsequent harm occurred in Canada.  Important to the court's analysis was that in Canada—like France—the airline is not responsible for wheelchair services.  *See id*.  Instead, the Greater Toronto Airport Authority (GTAA) is the airport authority responsible.  The GTAA and

its employees, as well as many of the witnesses, could not be compelled to appear outside of Canada.

Like *Khan* the inability of this Court to secure the attendance of the entities actually responsible for the alleged harm (ADP and Passerelle), as well as key witnesses and documents, materially impairs the Defendants' ability to have a fair trial and, thus, underscores the need for dismissal in favor of France. *See Polanco*, 941 F. Supp. at 1528 (citing *Piper* and noting the "substantial prejudice to defendant" if unable to implead other manufacturers as co-defendants); *Magnin,* 91 F.3d at 1429-30 (district court did not abuse its discretion in dismissing case where key witnesses and evidence were located in France).

    *4.*    ***Other Practical Problems Dictate Dismissal Of This Litigation.***  Many of the French witnesses most likely speak only French and will require interpreters. Numerous documents will require translation from French to English.  The prospect of extensive translation and travel costs of witnesses and attorneys if the litigation were to remain in Minnesota further weighs in favor of dismissal.  *See Magnin*, 91 F.3d at 1430 (heavy burden imposed as translation would be required of French-speaking witnesses); *Esheva*, 499 F. Supp. 2d at 500 (translation and travel expenses would "add enormously" to the expense of litigating foreign plaintiffs' claims in the U.S.).

    To proceed with litigation in this Court would be inefficient and potentially prejudicial to all parties.

**C.**    <u>**The Public Interest Factors Also Militate In Favor Of Dismissal**</u>

    The public interest factors include: (1) local interest in having localized controversies resolved at home; (2) administrative difficulties flowing from court

congestion; (3) interest in having the trial in a forum that is familiar with the law governing the action; (4) avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and (5) unfairness of burdening citizens in an unrelated forum with jury duty. *See Piper*, 454 U.S. at 241 n.6.

1. ***France's Interest Exceeds Any U.S. Interest.*** This lawsuit centers in France: it involves travel to France on a French airline and the alleged failure of the French airport authority—ADP—and any of its subcontractors—to provide a wheelchair. France has a far greater interest than the U.S. in adjudicating this lawsuit, especially given the alleged violation of an EU regulation by a French airport authority. *See Piper*, 454 U.S. at 260 ("[T]here is a local interest in having localized controversies decided at home."); *Polanco*, 941 F. Supp. at 1529 (dismissing on *forum non conveniens* grounds where "Minnesota has only an 'incremental' interest' in setting standards of its conduct in other countries" and where "the conduct challenged [] is in truth that of a Guatemalan corporation"); *see also Muraco*, 2015 WL 9462103 at *10-11 (St. Lucia had stronger interest in adjudicating claims for personal injuries to a tourist caused by St. Lucia resort); *Guimond v. Wyndham Hotels & Resorts*, No. 95-cv-0428, 1996 WL 281959, at *5 (S.D.N.Y. May 29, 1996) ("Jamaica, on the one hand, would certainly have an interest in adjudicating an action concerning a dispute that arose within its borders, especially where it concerns Jamaica's tourist industry – undoubtedly one of the mainstays of its economy.").

2. ***The Administrative Burdens and Choice of Law Issues Support Dismissal****.* Because this action has only a minimal connection to Minnesota, to compel local jurors to sit on what will be a lengthy trial to resolve this case would impose an unfair burden on

14

Minnesota's residents.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 76 (2d Cir. 2003) (finding that England's greater interest in regulating claims, application of English law, and limited New York interest would create a burden on a New York jury to hear and decide the case).  To continue with this action would place an additional undue burden on the Court's limited resources for an action in which it has no great interest.

As is common in virtually all cases arising out of international travel, this case poses complex choice of law issues.  *See Piper*, 454 U.S. at 251 (*forum non conveniens* "is designed in part to help courts avoid conducting complex exercises in comparative law"); *Magnin,* 91 F.3d at 1430 (affirming *forum non conveniens* dismissal and recognizing that it would be "[f]ar better for the case to be tried in France, rather than have a federal judge in Alabama "attempt to divine and correctly apply French substantive law").  If the Court retains jurisdiction, it will need to engage in a cumbersome exercise of interpreting European Regulations, specifically Regulation (EC) No. 1107/2006, including the case law that has developed in France and other EU countries under this regulation.  Additionally, French law will likely apply to damages.  The need to address complex issues of choice of law, and the probable application of foreign law on most if not all issues, strongly supports dismissal.  *See Magnin*, 91 F.3d at 1430.

In sum, a fair and rational balancing of the private and public interest factors supports the conclusion that dismissal in favor of France would best serve the convenience of the parties and the ends of justice.

**D.**   **Plaintiff Can Re-File Her Claims in France**

The final step in the *forum non conveniens* analysis is to ensure "that plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon*, 251 F.3d 1311. If this action is dismissed and refiled in France, the French courts have jurisdiction over Plaintiff's wrongful death claim.  Specifically, Article 46 of the Montreal Convention provides a French court with subject matter jurisdiction over an action against Delta, the contracting carrier, since the actual carrier, Air France, is domiciled and has its principal place of business in France.  *See* MC, Art. 46.  There is also treaty jurisdiction over the actual operating carrier, Air France, in France under Article 33.  *Id.*, Art. 33. Though the limitations period has tolled under the Montreal Convention, Defendants will stipulate to waive any statute of limitation defense, as well as accept service of process, and submit to the jurisdiction of the French courts in the event of a dismissal on *forum non conveniens* grounds.  *See* Passeri Declaration at ¶ 4.

**POINT II**
**THE COMPLAINT SHOULD BE DISMISSED**
**FOR FAILURE TO NAME ADP AS A NECESSARY PARTY**

In the event the Court does not dismiss on *forum non conveniens* grounds, it must dismiss the Amended Complaint for failure to name a necessary party.  The entirety of the Amended Complaint centers around the negligence of the entity who assisted, or in this case, allegedly failed to assist Decedent with his connecting flight in Paris, France.  This entity, Aéroports de Paris, is a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure.

16

Rule 19 employs a two-part test for determining whether a party necessary and indispensable: (1) whether joinder of the absent party is required and (2) whether the absent party may be joined.  *See* Fed. R. Civ. P. 19.  With respect to the first part, joinder is required where (a) "in that person's absence, the court cannot accord complete relief among the existing parties" or (b) disposing of claims in the person's absence may, inter alia, "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  *Id.* at 19(a)-(b).

Here, ADP meets the first part of the test.  ADP is the airport authority that is responsible for transporting passengers with reduced mobility pursuant to Regulation (EC) No. 1107/2006 of the European Parliament and of the Council of 5 July 2006 concerning the rights of disabled persons and persons with reduced mobility when travelling by air.  *See* Casati-Ollier Declaration at ¶ 13.  Article 8 of the Regulation provides that "[t]he managing body of an airport shall be responsible for ensuring the provision of [mobility] assistance" defined within the Regulation.  Parliament and Council Regulation 1107/2006, art. 8, 2006 O.J. (L 204) (EC).  *See id.* at Ex. A.  That assistance includes, but is not limited to, communicating a passenger's specific needs to the relevant personnel, physical support in embarking and disembarking from aircraft (including the use of any necessary equipment, such as lifts or wheelchairs), and travel in and about the airport.  *Id.* at Annex I.  The Regulation enumerates an airline's duties to passengers with mobility needs, and it *does not include* assistance in embarking or disembarking from flights or moving about within the airport.  *See id.* at Annex II.

According to the applicable EU regulation, ADP—not Delta or Air France—had sole responsibility for assisting a passenger who requested wheelchair service.  Defendants properly informed ADP of the need for wheelchair assistance.  *See* Casati-Ollier Declaration at ¶ 14.  Defendants have no further duties under applicable law.  It would be extremely prejudicial to Defendants to proceed in this action without ADP—the French airport authority responsible—and its subcontractors.  *See Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc*., 149 F.R.D. 185, 188-90 (1993) (finding that a non-contract party was a necessary and indispensable party because it was the primary participant in the fraudulent acts).  It would also be prejudicial to ADP for the litigation to proceed without it, as it could have potential implications on future litigation, or, at the very least, leave ADP open to being sued separately by Plaintiff in Paris.  *See id*. at 189 (finding relevant that plaintiff could bring a separate claim for relief against the absent party).  Accordingly, ADP must be joined.

With respect to the second part of the Rule 19 inquiry, a court must determine whether joinder is feasible.  Given ADP's location and lack of connection to the United States, Defendants respectfully submit that neither ADP nor its subcontractor can be joined for jurisdictional reasons.  *See* Casati-Ollier Declaration at ¶ 19 (noting both are incorporated and maintain their principal place of business in France); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (general jurisdiction proper where a defendant is "essentially at home" in the forum state); *See Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (requiring that the "suit-related conduct must create a substantial connection with the forum State").  Thus, applying Rule 19(b), the Court should dismiss the action because

ADP is an "indispensable party" and the action cannot proceed without it.  *See Dou Yee Enterprises (S) PTE, Ltd.*, 149 F.R.D. at 189.  As noted *supra*, a judgment rendered in ADP's absence would severely prejudice Defendants, as well as ADP.  Defendants will be left to defend a lawsuit involving the alleged wrongful conduct of an absent party.  Given the clear and unambiguous EU regulation making ADP responsible for the claims alleged by Plaintiff, there is no way to lessen the prejudice to Defendants without ADP's participation.  S*ee Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 229 (D. Minn. 2015).  Neither Defendant has a relationship or connection to ADP such that it is responsible for defending its interest.  Under these circumstances, ADP would be exposed to potential liability without the ability to defend itself and could be subject to separate claims in France by Plaintiff.

## POINT III
## THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER THE MONTREAL CONVENTION

Additionally, the Amended Complaint fails to state a claim for relief under the Montreal Convention and must be dismissed.  Plaintiff's claims arise under a treaty of the United States known as the Montreal Convention, which is a treaty that covers "all international carriage of persons, baggage or cargo performed by aircraft for reward."  MC, Art. 1(1).  It "unifies and replaces the system of liability that derives from the Warsaw Convention."  *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004).  As set forth in the Amended Complaint, it is undisputed that the transportation out of which the subject matter of this action arose was "international carriage" within the meaning of Article 1(2) of the Montreal Convention and, therefore, the rights and liabilities of the

parties are exclusively governed by the provisions of this Convention. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999).[3]

Chapter III of the Montreal Convention sets forth the only causes of action that a passenger may bring against a carrier, including death or injury of passengers (Art. 17), damage to cargo (Art. 18), and delay of passengers and baggage (Art. 19). The Amended Complaint purports to assert two causes of action under the Montreal Convention: one under Article 17(1) as it relates to Decedent's alleged "rapid deterioration" of his already-cancer-weakened condition, and a second under Article 19 for the alleged delay of Decedent's checked baggage. Plaintiff fails to adequately state a claim under Article 17(1) or Article 19.

## A.    Plaintiff Has Failed To Plead Article 17 "Accident"

Plaintiff's claims should be dismissed with prejudice and without leave to replead because: Plaintiff did not and cannot present support for an Article 17(1) "accident," *i.e.*, an "unexpected and unusual event or happening that is external to the passenger" (*Air France v. Saks*, 470 U.S. 392, 405 (1985)) that causes a *bodily injury*. Instead, Plaintiff's claim, if any, is one for passenger delay under Article 19.

---

[3] To the extent that the Amended Complaint asserts a claim under the Air Carrier Access Act (ACAA), 49 U.S.C. § 41705, such a claim must be dismissed. The Montreal Convention provides the *exclusive* cause of action to Plaintiff for the alleged incident and, in any event, the ACAA does not provide a private right of action. *See Shotz v. Am. Airlines, Inc.*, 323 F. Supp. 2d 1315, 1316 (S.D. Fla. 2004), *aff'd*, 420 F.3d 1332 (11th Cir. 2005) ("Congress did not intend to create a private right of action in a federal district court to vindicate the [ACAA]"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2002) (collecting cases stating the same). Here, Plaintiff already submitted a DOT Complaint in connection with the incident—she does not have a direct right of action as against Defendants.

### 1.    *Plaintiff Does Not And Cannot Demonstrate An "Accident" Occurred*

Article 17 of the Convention sets forth "the conditions under which an international air carrier can be held liable for injuries to passengers." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 532-33 (1991).  Article 17 provides that:

> The carrier is liable for damage sustained in case of **death or bodily injury** of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any operations of embarking or disembarking.

MC, Art. 17(1) (emphasis added).  In order to state a claim for relief, Plaintiff must allege: (1) an accident; (2) that caused death or bodily injury; and (3) that took place on the plane or in the course of any of the operations of embarking or disembarking. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1172 (11th Cir. 2014).  The Supreme Court has defined "accident" under Article 17 as "an unexpected or unusual event or happening that is external to the passenger."  *Saks*, 470 U.S. at 405.

Plaintiff has failed to articulate an "unusual or unexpected event" that *caused* "death or bodily injury".[4]  The Amended Complaint asserts that, as a result of lack of wheelchair assistance, Decedent "missed his [connecting] flight" and "was seated immobilized in the gate seating area for approximately 12 hours."  *See* Dkt. Entry No. 7, ¶ 9.  No palpable physical injury is alleged.   Instead, the Amended Complaint states that the alleged

---

[4] Plaintiff has the burden of showing that the failure to provide a wheelchair constitutes an "accident" under Article 17(1).  *See Tseng*, 525 U.S. at 162.  ADP's alleged failure to provide a wheelchair does not constitute an "accident" attributable to either Defendant.  In "cases in which the accident has no relationship to the operation of the aircraft … liability is almost never found." *Maxwell v. Aer Lingus Ltd.*, 122 F. Supp. 2d 210, 212 (D. Mass 2000).

immobilization "resulted in rapid deterioration of [Decedent's] already weakened physical and mental condition." *See id.* Such an allegation is nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" and falls patently short of stating a claim for a "bodily injury" or "death" under Article 17. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 578 (2007)) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations omitted).

To recover under Article 17(1), Plaintiff must make a prima facie showing of a "bodily injury" with an uninterrupted connection between the alleged event and the alleged injury. No showing is made here. *See, e.g., Cush v. BWIA Int'l Airways, Ltd.*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001); *Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 70 n.2 (1st Cir. 2000) (the alleged bodily injury or death must be proximately caused by the alleged accident); *see also Callahan v. United Airlines, Inc., et al*., No. 16-cv-680, 2017 WL 4324703 (W.D. Ok. Sept. 28, 2017) (dismissing loss of consortium claims as failing to meet Article 17(1) "bodily injury" requirement); *Naqvi v. Turkish Airlines, Inc.*, 80 F. Supp. 3d 234 (D.D.C. 2015) (dismissing claims of physical manifestations of stress due to incident onboard the aircraft for failing to meet "bodily injury" requirement); *see also Booker v. BWIA West Indies Airways Ltd*., No 06-cv-2146, 2007 WL 1351927, at *4 (E.D.N.Y. May 8, 2007) (claims of asthma attack upon learning of baggage theft did not related to the alleged accident onboard the aircraft).

Additionally, claims for emotional or dignitary injuries are recoverable under Article 17 only if they *flow from* a physical injury. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 368, 374 (2d Cir. 2004) (plaintiffs who suffered knee, back, shoulder, and hip injuries as a result of an abnormal landing and evacuation were precluded from recovering damages for their subsequent fear, anxiety, and nightmares of the incident); *see also Longo v. Air France*, Civ. No. 95-0292, 1996 WL 866124, at *2 (S.D.N.Y. July 25, 1996) (court dismissed emotional distress claims arising from an evacuation into the water during which passengers allegedly received bruises, because the passengers' "fear of death" resulted not from the bruises but from the accident itself). Physical manifestations of mental injuries likewise are not recoverable under the Montreal Convention. *See In re Aircrash at Little Rock, Ark., on June 1, 1999 (Lloyd)*, 291 F.3d 503, 512 (8th Cir. 2002), *cert. denied*, 537 U.S. 974 (2002) ("physical manifestations of mental injuries such as weight loss, sleeplessness, or physical changes in the brain resulting from chronic PTSD are not compensable under the treaty"); *Terrafranca v. Virgin Atlantic Airways, Ltd.*, 151 F.3d 108 (3d Cir. 1998) (same); *Bobian v. CSA Czech Airlines*, 232 F. Supp. 2d 319 (D. N.J. 2002), *aff'd,* 93 Fed. Appx. 406 (3d Cir. 2004) (same).

Because the Amended Complaint does not assert a physical injury, Plaintiff's Article 17 claim must be dismissed. The dismissal should be with prejudice because under no set of facts can Plaintiff assert an Article 17 accident on behalf of Decedent. Decedent, a wheelchair-bound individual suffering from terminal pancreatic cancer, allegedly was left "immobilized" in a seat at a gate with his wife. By Plaintiff's own admission, Decedent was not otherwise able to walk and, as stated in her DOT Complaint, was "flying home to

live out his last days." *See* Passeri Declaration, Ex. A. Decedent was previously diagnosed with terminal pancreatic cancer, advanced to the point where all potentially curative therapy had been discontinued. *See id.* To suggest that the delay and inconvenience during the transfer in Paris led to accelerated cancer growth is a claim divorced from all scientific reality. Plaintiff does not suggest even a hypothetical scenario in which a 12 hour delay (nine hours longer than expected) could serve as the proximate cause of a death by terminal cancer some 26 days later. *See Twombly*, 550 U.S. at 570 (dismissal is proper where the complaint fails to allege facts stating "a claim to relief that is plausible on its face"); *see also Cush*, 175 F. Supp. 2d at 487 (finding uninterrupted connection between the alleged event and the injury is required).[5]

In *Vumbaca v. Terminal One Group Ass'n L.P.*, the district court similarly dismissed a passenger's personal injury claims arising from a 7-hour aircraft tarmac delay. The passenger claimed the delay resulted in "hunger and thirst, [] physical discomfort as a result of being confined to a small space, with little room to move, [] inadequate restroom facilities" and caused her to be "nauseas" and "physically exhausted for several days, which interfered with my normal activities." 859 F. Supp. 2d 343, 359 (E.D.N.Y. 2012). The court ultimately found that "Plaintiff suffered no impact injuries or physical manifestations of distress … [t]he sensations she described in her complaint—hunger, thirst, headache,

---

[5] In any event, an "accident" does not occur if the injury at issue resulted from "passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Saks*, 470 U.S. at 406; *Tseng*, 525 U.S. at 172. Here, it is clear that Decedent died of terminal cancer, *i.e.*, an internal condition.

nausea, and discomfort—are not compensable." *See id.* at 365.  Like *Vumbaca*, Plaintiff will not be able to assert any claim for anything more than frustration and discomfort, which is not compensable.

For these reasons, Plaintiff cannot state a claim for an "accident" and should not be given leave to replead.

### 2.     *Plaintiff's Claim, If Any, Is One For Passenger Delay Under Article 19*

The gravamen of Plaintiff's claim against Defendants is the alleged 12-hour delay experienced by Decedent at CDG while awaiting his connecting flight.  Article 19 intended to cover this exact scenario—*i.e.*, delay in transport.  Plaintiff attempts to pigeon-hole Decedent's delay claim into Article 17—which has a higher damages cap.  However, because Decedent suffered no physical impact injuries, the claim for relief sounds in Article 19, not Article 17.  *See* MC, Art. 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.").

Under Article 19, Plaintiff may only assert a claim for economic damages.  *See Campbell*, 760 F.3d at 1170 (outlining damages allowed under Article 19); *see also Vumbaca*, 859 F. Supp. 2d at 366 ("Article 19 only applies to 'economic loss occasioned by delay in transportation.'").  Compensation for emotional loss, mental injury, or inconvenience are not permitted.  *See Lee v. Am. Airlines, Inc.*, 335 F.3d 386, 387 (5th Cir. 2004) (inconvenience damages are a form of mental injury not recoverable under the Warsaw Convention); *Mizyed v. Delta Airlines, Inc.*, No. 12-cv-382, 2012 WL 1672810, at *15 (E.D. La. 2012) ("mental injury damages are not recoverable under Article 19").  The Amended Complaint does not contain any economic damages stemming from the

delay, *e.g.*, hotel, food, or taxi.  Because no such economic damages were alleged, the Amended Complaint must be dismissed without leave to replead.

**B.     To The Extent Alleged, Plaintiff's Article 19 Baggage Claim Must Be Dismissed**

Though not specifically pled, the Amended Complaint makes reference to a claim for "delay" in receiving checked baggage.  Plaintiff claims that Decedent was "without his necessary medication while his luggage was in transit to Cairo, Egypt."  Dkt. Entry No. 7, ¶ 9.  The alleged delay resulted in "rapid deterioration of plaintiff's decedent's already weakened physical and mental condition."  *See id*.  To the extent this claim is duplicative of Plaintiff's Article 17 action, it should be dismissed. These allegations, without more, are insufficient in any event to state a  baggage claim for relief under Article 19.  The circumstances of the baggage delay claim are completely absent, including the length of the baggage delay, and whether notice was provided as required by Montreal Convention Article 31(2) and (3).[6]  *See, e.g., Molefe v. KLM Royal Dutch Airlines*, 602 F.Supp.2d 485, 496 (S.D.N.Y. 2009) (dismissing baggage complaint for failure to provide notice of delay and damage).  Additionally, Plaintiff does not assert a cognizable claim for damages occasioned by the alleged baggage delay.  As set forth above, Plaintiff does not allege a physical injury and emotional injuries are not recoverable in delayed baggage cases.  *See, e.g., Bassam v. Am. Airlines*, 287 Fed. Appx. 309, 2008 WL 2725228, at *8 (5th Cir. 2008)

---

[6] Additionally, Air France's Contract of Carriage specifically provides that "Passengers are advised not to carry any medication in their Checked Baggage."  *See* Air France General Conditions of Carriage, Art. 10 available at https://www.airfrance.us/US/en/common/transverse/footer/edito_cgt3_airfrance.htm.  If Decedent packed medication in his checked baggage, he did so at his own risk; Defendants cannot be held liable.

("damages for purely emotional injuries are not available under the Montreal Convention");

*Booker*, 2007 WL 1351927, at *4 (holding plaintiff cannot recover emotional injuries caused by the delay of baggage).

In the event the baggage claim is not dismissed, Defendants' liability for the delayed bag should be limited pursuant to Article 22 of the Convention.  Article 22 limits a carriers liability to provable damages up to 1,131 Special Drawing Rights.  *See* MC, Art. 22.

## CONCLUSION

For the foregoing reasons, Defendants Delta Air Lines, Inc. and Société Air France respectfully request that this Court enter an order dismissing the Amended Complaint on *forum non conveniens* grounds, or alternatively, dismissing the Amended Complaint for failure to join a necessary party and for failure to state a claim upon which relief may be granted.

Dated:  September 10, 2018.

**GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.**

By:    /s/ Julia Dayton Klein
      Charles K. Maier (MN #230315)
      Julia Dayton Klein (MN #319181)
      Raymond J. Konz (MN #391236)
      Molly R. Littman (MN #398449)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 632-3000 Telephone
(612) 632-4016 Facsimile
Charles.Maier@gpmlaw.com
Julia.DaytonKlein@gpmlaw.com
Raymond.Konz@gpmlaw.com
Molly.Littman@gpmlaw.com

27

**HOLLAND & KNIGHT, LLP**

Sarah G. Passeri
Christopher G. Kelly
*Pro Hac Vice* Pending
Holland & Knight, LLP
31 West 52nd Street, 12th Floor
New York. NY   10019
Telephone: (212) 513-3200
Email: Sarah.Passeri@hklaw.com
Email. Christopher.Kelly@hklaw.com

**ATTORNEYS FOR DEFENDANTS
DELTA AIR LINES, INC. AND
SOCIETE AIR FRANCE**

GP:4847-9948-8370 v1

28