**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| REHAB ELDEEB, as trustee for the next of kin of FAHMY ELDEEB, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC., a corporation, and SOCIÉTÉ AIR FRANCE, S.A. d/b/a AIR FRANCE, a corporation,<br><br>Defendants. | Civil File No. 18-CV-1128 (DSD/TNL)<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

---

## INTRODUCTION

There are three factors unique to this case which make Defendants' motion different from the usual *forum non conveniens* motion and require its denial. First, the motion is brought, in part, by a domestic defendant in a case on behalf of a domestic Plaintiff for the personal injury and wrongful death of a domestic decedent, Plaintiff's late father. Second, the highest court in France has held that it will not hear a Montreal Convention case where the plaintiff was denied her first choice of one of the available fora and therefore is not an available alternative forum for the case at bar. Third, Defendants' entire claim of inconvenience is based upon an alleged need for evidence from a wheelchair service provider at the airport in Paris. However, Defendant Air France has already admitted that it failed to provide wheelchair assistance to Plaintiff's father and the Department of Transportation has stated that the failure to do so constituted a violation of the federal Air Carrier Access Act, and thus any evidence from France as to the lack of wheelchair assistance is not relevant. Furthermore, the supreme interest of the United States in providing redress for its citizens in cases against defendants operating within its borders is not outweighed

by any interest of France. Therefore, Defendants' motion to dismiss based upon *forum non conveniens* must be denied.

Additionally, Defendants' motion to dismiss based upon failure to join must also be denied as Defendants' sole basis for alleging that Plaintiff's complaint should be dismissed for failing to join as a defendant the foreign entity which Paris Charles de Gualle Airport allegedly contracted with to provide wheelchair assistance is misapplication of European Union regulations. Defendants' argument that European Union regulations preempt the Montreal Convention and thus absolve air carriers operating in the European Union—like Defendants—of any responsibility for ensuring passengers who have requested wheelchair assistance are provided such assistance is unsupported by the law and logic. Therefore, Defendants' motion to dismiss predicated on this alternative ground must be denied.

Lastly, Defendants' motion to dismiss Plaintiff's amended complaint with prejudice for alleged failure to state a cause of action upon which relief can be granted must be denied. The stringent standard cannot be met since Plaintiff has sufficiently alleged facts which allow Plaintiff to introduce evidence at trial that Defendants' failure to ensure wheelchair assistance for the Decedent in disembarking from the first leg of his itinerary to Cairo, Egypt, resulting in the Decedent being immobilized at the arrival gate of the Air France flight from Minneapolis to Paris, constitutes an accident under the Montreal Convention. This is particularly true, where Air France has admitted the requested assistance was not provided and the Department of Transportation has determined that Air France was responsible for providing wheelchair assistance to the Decedent and the failure to do so was a violation of the Air Carrier Access Act. Therefore, Defendants' motion to dismiss predicated on failure to state a cause of action must be denied.

## I. FACTS

Plaintiff is a citizen of the United States and a resident of Minnesota. (Exhibit A – Affidavit of Rehab Eldeeb, ¶ 18). Plaintiff's father, the Decedent, was a citizen of the United States and a resident of Minnesota. *Id.* Plaintiff originally purchased a round trip ticket for her father from Minneapolis, Minnesota, to Cairo, Egypt, departing on August 11, 2015. (*Id.* at ¶ 5, Exhibit 1 thereto). However, due to her father's illness, Plaintiff had to postpone his trip to Egypt. (*Id.* at ¶ 6). Plaintiff later rebooked the trip directly through Delta Air Lines, Inc. ("Delta") by calling Delta's reservation telephone number from her home in Minnesota. (*Id.* at ¶ 7).

The itinerary Plaintiff booked directly through Delta provided that Plaintiff's father would depart on a flight operated by Air France from Minneapolis on May 10, 2016, and would arrive at Paris de Gualle Airport where Plaintiff's father would transfer to another flight operated by Air France from Paris to Cairo, Egypt. (*Id.* at ¶ 8, Exhibit 2 thereto). Plaintiff's mother decided to accompany Plaintiff's father on the trip to Egypt. Plaintiff booked identical itinerary for her mother as she did for her father with the exception that Plaintiff booked her mother's itinerary directly through Air France. Plaintiff's parents were to return from Egypt on December 10, 2016. (*Id.* at ¶ 10, Exhibit 3 thereto). While booking Plaintiff's father's itinerary through Delta, Plaintiff specifically requested that Plaintiff's father be seated in a seat near a restroom and have wheelchair assistance throughout his travels due to his health condition. (*Id.* at ¶ 9).

Plaintiff's mother and late father departed for Cairo on May 10, 2016, as planned on Air France Flight 673. When the flight landed in Paris, Plaintiff's parents were informed that there was a shortage of wheelchairs and that Plaintiff's father would need to wait until a wheelchair was available. (*Id.* at ¶ 11). Eventually, Plaintiff's father was taken off of the aircraft and brought to the arrival gate. Instead of being transferred by wheelchair to the departure gate of the second leg

of their itinerary to Cairo, Plaintiff's father was placed in a seat at the arrival gate and told that he would need to wait for a wheelchair to be brought to take him to his connecting gate. Plaintiff's mother and father waited at the gate where Air France Flight 673 had arrived for hours, but wheelchair assistance to the gate of the connecting flight was never provided. (*Id.* at ¶ 12).

Due to the inability to travel to the departure gate for the connecting flight, Plaintiff's parents missed their connecting flight to Cario and had to be rebooked on a later flight. As a result, their layover was extended by nine hours. During that entire time, Plaintiff's father was without wheelchair assistance and was unable to mobilize or even to take himself to the restroom. Unable to mobilize, Plaintiff's father soiled himself and had to remain in that condition until a Good Samaritan was kind enough to assist Plaintiff's mother in getting Plaintiff's father to the restroom to clean up as much as possible. (*Id.* at ¶13).

Plaintiff's parents eventually took the later flight to Cairo where Plaintiff's father was treated by a local physician. The physician opined that the incident resulting in Plaintiff's father's inability to mobilize had deleterious effects on his already weakened condition. (*Id.* at ¶ 14). Further, due to the missed flight from Paris to Egypt, Plaintiff's father's luggage was delayed one week. During that time, Plaintiff's father was without his necessary mediation. The physician in Egypt also opined that the lack of prescribed medication during that time negatively impacted Plaintiff's late father's health. (*Id.* at ¶ 15). Plaintiff's father later died on June 4, 2016 and Delta reimbursed Plaintiff for the unused return airfare. (*Id.* at ¶ 16, Exhibit 4 thereto).

Plaintiff, as trustee for the next of kin of Plaintiff's father, brought an action for Plaintiff's father's personal injury and wrongful death against the contracting air carrier, Delta, and the actual air carrier, Air France, under the Montreal Convention.

## II.   **THE MONTREAL CONVENTION**

The Convention for Unification of Certain Rules for International Carriage by Air, opened for Signature at Montreal on 28 May 1999, commonly known as the "Montreal Convention," is an international treaty which governs the liability of air carriers in claims brought by passengers of international air travel. The United States, France, and Egypt, are all signatory parties of the Convention. The Convention provides the exclusive remedy for passengers traveling internationally by air for damages occasioned as a result of an incident in the course of travel, including bodily injury or death. The Convention not only dictates the amount of damages a passenger can recover for bodily injury or death, it also prescribes the elements that a passenger bears the burden of proof on in order to recover such damages. Unlike common law causes of action against an air carrier for bodily injury or death, passengers are not required to prove that the airline was negligent. Rather, Article 17 of the Convention states that the only conditions necessary to hold the carrier liable:

"The carrier is liable for damages sustained in case of death or bodily injury of a passenger *upon condition only* that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." (Art. 17(1), emphasis added).

Courts have interpreted the Montreal Convention as rendering the air carrier virtually strictly liable for a passenger's injuries that result from an accident on board or while embarking or disembarking an international flight. *Girard v. Am. Airlines, Inc.*, 2003 WL 21989978, at *2 (E.D.N.Y. Aug. 21, 2003); *Walsh v. Koninklijke Luchtvaart Maatschappij N.V.*, 2011 WL 4344158, at *1 (S.D.N.Y. Sept. 12, 2011); *Kwon v. Singapore Airlines*, 356 F. Supp. 2d 1041,

1043 (N.D. Cal. 2003); *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003);

*Wallace v. Korean Air*, 214 F.3d 293, 297 (2d Cir. 2000).

Whether Plaintiff's factual allegations constitute an "accident" under the Convention

subjecting the carrier to strict liability for Plaintiff's damages is a question of fact. *Air France v.*

*Saks*, 470 U.S. 392, 405 (1985).

## III.   ARGUMENT – DEFENDANTS' MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS* MUST BE DENIED

### A.   DEFENDANTS FAIL TO MEET THEIR BURDEN OF PROVING FRANCE IS AN AVAILABLE FORUM FOR THE CLAIMS OF PLAINTIFF AGAINST DEFENDANTS

#### 1.   The French Court Will Decline to Accept Jurisdiction Based Upon *Forum Non Conveniens* Dismissal of a Prior Pending Action In This Court.

As with every element of the *forum non conveniens* defense, Defendants bear the burden

of proving that their proposed alternative forum is available. *Reid-Walen v. Hansen,* 933

F.2d 1390, 1393 (8th Cir. 1991). If there is any doubt as to whether there is an available forum

in France, Defendants' motion must be denied. A court may not grant a *forum non conveniens*

dismissal based upon the possibility that an alternative forum may be available. *See Wendt v.*

*Offshore Trust Serv., Inc.*, No. 08 C 3612, 2010 WL 1849426, at *9 (N.D. Ill. May 7, 2010) *citing*

*Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246

(2nd Cir. 2001). The highest court in France, The Cour de cassation, has held that when a Montreal

Convention claimant has chosen a competent jurisdiction under Article 33 of the Convention,

outside of France, France is no longer an available venue for the case. *Jacques v. Newvac Corp.,*

Cour de cassation, First Civil Chamber, December 7, 2011. (Attached hereto as Attachment B).

The French Supreme Court based its finding on the language contained in the jurisdictional

provisions of the Montreal Convention. Under the Convention, the following fora are available

venues for a plaintiff's personal injury or wrongful death claim: (1) place where the carrier is domiciled, (2) place where the carrier has its principal place of business, (3) place where the contract was made, (4) place of the destination, or (5) place of the plaintiff's principal and permanent residence provided the carrier does business there. Under Articles 33 and 46, the action can be brought in the court of any of those places *"at the option of the plaintiff." Id.* (emphasis added). Thus, according to the French Supreme Court, once a plaintiff has chosen one of the competent jurisdictions, the French court lacks jurisdiction if the plaintiff is forced to refile her action in France following a *forum non conveniens* dismissal.

Tellingly, Defendants' expert omits any reference to the Cour de cassation's ruling that France is not an available forum following a *forum non conveniens* dismissal of Plaintiff's Montreal Convention claim. Defendants' expert cannot credibly offer an opinion stating that the French court would have subject matter jurisdiction over this case without addressing the Cour de cassation's 2011 holding that the French court cannot exercise jurisdiction since the Plaintiff has already elected to file suit in one of the competent jurisdictions under Articles 33 and 46—the United States. Defendants' and their expert's credibility is severely damaged considering defendant Delta was denied *forum non conveniens* dismissal in favor of France in a 2013 case in part because the Court found that "in light of the Cour de cassation's position, [there is] doubt as to the availability of an alternative forum in France after a *forum non conveniens* dismissal." *Delgado v. Delta Air Lines, Inc.*, 43 F. Supp. 3d 1261, 1265 (S.D. Fla. 2013). Delta's expert in that case was Maylis Casati-Ollier—the same French lawyer offering an opinion as to the availability of the French court in this case. Pursuant to the uncontested holding of the French Supreme Court and contrary to Defendants' and its expert's assertion, a French court would not exercise jurisdiction over Plaintiff's claim if Defendants' *forum non conveniens* motion is granted and thus,

France is not an available alternative forum. Defendants' motion should therefore be denied and no inquiry into the private and public interest factors is necessary. *See Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985) (*Forum non conveniens* dismissal cannot be granted where defendants fail to demonstrate they would be subject to jurisdiction in the alternative forum.); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814 (7th Cir. 2016) (*Forum non conveniens* dismissal vacated where trial court did not hold defendant to its burden of proving that it would be subject to jurisdiction in the proposed alternative forum).

**B.   DEFENDANTS DO NOT MEET THEIR HEAVY BURDEN OF PROVING THAT THIS U.S. FORUM IS SIGNIFICANTLY INCONVENIENT TO THEM AND THAT THEIR PROPOSED ALTERNATIVE FORUM IN FRANCE IS SUBSTANTIALLY MORE CONVENIENT TO ALL PARTIES**

**1.   Plaintiff's Choice Of This Forum Is Entitled To Substantial Deference.**

Defendants suggest that Plaintiff's choice of this forum is to be given little, if any, deference because of the mere fact that Plaintiff's father died in Cairo, Egypt (notably, *not* France). That simply is not true. First, Plaintiff and Plaintiff's father both are/were U.S. citizens. Residents and U.S. citizens should rarely be denied access to courts of the United States. *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 342 (8th Cir. 1983) ("[C]ourts should require positive evidence of *unusually extreme* circumstances, and should be *thoroughly convinced* that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country"; quoting *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 435 (D.C. Cir. 1976) (emphasis added)); *Flynn v. General Motors, Inc.,* 141 F.R.D. 5, 16 (E.D.N.Y. 1992) ("[I]t seems patently unfair to force an American citizen suing an American corporation . . . to seek redress outside the U.S."). *See also other circuits holding same: Adelson v. Hananel*, 510 F.3d 43, 53 (1st Cir. 2007) ("heightened deference which accompanies a plaintiff's choice of *home* forum"); *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d

488, 498 (2d Cir. 2002) ("A domestic petitioner's choice of its home forum receives great deference"); *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) ("presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country."); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 803 (4th Cir. 2013) ("Courts considering a motion to dismiss under *forum non conveniens* against a citizen plaintiff choosing her home forum must apply this increased deference in their analysis.").

The Eighth Circuit has reversed a *forum non conveniens* dismissal where the "district court failed to give proper deference to plaintiff's choice of forum and failed to give proper weight to the fact that both the plaintiff and the defendants were United States citizens." *Reid-Walen*, 933 F.2d at 1394. Other circuit courts have reversed dismissals predicated on *forum non conveniens*, in part, on the same grounds. *See Duha v. Agrium, Inc.,* 448 F.3d 867, 873 (6th Cir. 2006) ("district court did not apply required deference for a forum choice made by a U.S. plaintiff."); *SME Racks, Inc*, 382 F.3d at 1102 (reversed where "district court referenced the presumption in plaintiff's favor" but "failed to apply any presumption in its analysis."); *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000) ("district court gave inadequate significance to Plaintiffs' choice of forum as American citizens.").

Here, Plaintiff and Plaintiff's father are/were U.S. citizens permanently residing in Minnesota. Contrary to Defendants' assertion that Decedent had traveled to Egypt to live out his last days, Plaintiff had arranged for a roundtrip itinerary for her father. Defendants' mere assertion, without factual support, that Plaintiff's late father intended to live out the last of his days in Egypt does not destroy the substantial deference conferred upon Plaintiff by virtue of her U.S. citizenship and residence in Minnesota, as well as that of her late father. Like the plaintiff in *Reid-Walen*,

Plaintiff's late father "was not engaging in business abroad," but instead was on a vacation. 933 F.2d at 1395. Defendants do not and cannot contest that Plaintiff herself is a U.S. citizen and resident entitled to the remedy of U.S. courts in the absence of exceptional circumstances. Plaintiff certainly has a substantial interest in obtaining a remedy for the wrongful death of her father and the Eight Circuit has concretely held that "when the plaintiff is a U.S. citizen with a real interest in the controversy, the plaintiff's choice of forum *always* should be accorded substantial deference at the outset." *Id.* at 1396 (emphasis in original). Defendants fail to meet their burden of proving that Plaintiff is entitled to anything less than substantial dereference. Therefore, the Court must afford substantial deference to Plaintiff's choice of forum—the U.S.—in its *forum non conveniens* analysis. *Id.* at 1394.

### 2. Defendants Are Not Inconvenienced By Defending This Montreal Convention Case In The United States.

The Eighth Circuit has held that "when the forum resident defendant seeks dismissal, the fact should weigh strongly against dismissal." *Reid-Walen*, 933 F.2d at 1395. *See also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011) (action filed in the plaintiff's home forum presumed to be convenient, particularly where forum is also home to defendant). Plaintiff filed her Montreal Convention claim against both the contracting carrier, Defendant Delta, and the actual carrier, Defendant Air France. Plaintiff could have elected to file suit against Delta solely. In an effort to include all of the interested parties, Plaintiff named both carriers as Defendants. Considering Defendants are also moving to dismiss the present action for an alleged failure to add indispensable parties as Defendants, Defendants should not benefit from Plaintiff's inclusion of **all** the potentially interested parties. Defendants' motion focuses on Air France being a French carrier while wholly ignoring that Delta is a United States carrier defending an action in the U.S. brought on by a U.S. Plaintiff for the death of her U.S. citizen father. Obviously,

Defendants are aware of the incredulous nature of seeking *forum non conveniens* to a foreign forum when both Plaintiff and Defendant are U.S. citizens litigating in their home court.[1]

Air France's presence in the action does not weaken the presumption that the U.S. is a convenient forum for all parties. Delta and Air France's defenses in this action, if any, are squarely aligned. Plaintiff's father's itinerary was booked through Delta as part of its codeshare agreement with Air France. Both Delta and Air France are considered carriers under the Montreal Convention and are wholly responsible for Plaintiff's damages. Significantly, Delta and Air France are represented by the exact same six counsel in this action. Defense counsel waived formal service on behalf of both Defendants (Doc. 11) and filed single appearances for both Defendants. (Doc. 10, 14, 15, 17, 18). Clearly, Air France is not any more inconvenienced by litigating in Plaintiff and Delta's home forum (the United States) than the domestic parties are.

### 3.    Evidence Relevant To Plaintiff's Montreal Convention Claim Is Located In the United States and Egypt, But Not In France.

In considering the private interest factors of accessibility of evidence and witnesses, "the court should focus on the precise issues that are likely to be tried," *Iragorri,* 274 F.3d at 74, and "scrutinize the substance of the dispute between the parties to evaluate what proof is required." *In re Bridgestone/Firestone,* 190 F.Supp.2d at 1125, *quoting Van Cauwenberghe v. Biard,* 486 U.S. 517, 528 (1988). As the court stated in *Iragorri v. United Technologies Corp.,* "[T]he court might reach different results depending on whether the alleged negligence lay in the conduct of the actors at the scene of the accident, or in the design or manufacture of equipment at a plant distant from the scene of the accident." 274 F.3d 65, 74 (2d Cir. 2001). *See also Gates Learjet Corp. v. Jensen,*

---

[1] As this is an international *forum non conveniens* motion to dismiss, the proper comparison is not between Minnesota and France, but between the U.S. and France. *Mercier v. Sheraton Int'l, Inc.,* 935 F.2d 419, 430 (1st Cir. 1991).

743 F.2d 1325, 1335-36 (9th Cir. 1984) (Court should evaluate the materiality and importance of the anticipated witnesses' testimony and evidence and then determine their accessibility and convenience to the forum).

Plaintiff's Montreal Convention claim against Defendants is for the damages incurred by Defendants' failure to ensure wheelchair assistance to Plaintiff's father as Plaintiff requested. Plaintiff alleges that Defendants' failure to ensure wheelchair assistance is an accident within the meaning of Article 17 of the Montreal Convention. Evidence of the injuries and damages suffered by Plaintiff's father, and by extension Plaintiff, as a result of the accident are the records of Plaintiff's father's medical providers in Minnesota and the records of Plaintiff's medical treatment in Egypt.[2] Little other documentary evidence is necessary, if any, considering Defendant Air France's admission that Plaintiff's father was not provided wheelchair assistance at the airport in Paris and the Department of Transportation's conclusions following investigation into the accident.

As Defendants acknowledge in their motion, Plaintiff filed a complaint with the U.S. Department of Transportation ("DOT") following the accident. Defendants attached Plaintiff's complaint as well as the notice Defendant Air France received from the DOT as Exhibit A to Attorney Passeri's declaration. (Doc. 23). However, Defendants omit the rest of the correspondence between Plaintiff, Defendant Air France, and the DOT as the remainder of the file negates the need for any evidence from France not within the control of Defendant Air France. Following receipt of Plaintiff's complaint filed with the DOT, Defendant Air France sent Plaintiff a letter on November 25, 2016, admitting, **"your father did not receive the assistance he was entitled to receive at Paris-CDG airport, upon arrival of Air France flight AF673 10MAY**

---

[2] Plaintiff's father, the Decedent, received no medical treatment in France.

**MSPCDG, due to a strike involving wheelchair assistance.**" (Exhibit 5 to Attachment A) (emphasis added).

The DOT then sent a letter to Plaintiff containing an investigation summary sheet. (Exhibit 6 to Attachment A). The DOT conspicuously concluded that Air France had violated the Air Carrier Access Act, 14 CFR Part 382—"Section 382.91(a) requires carriers to provide assistance to passengers with disabilities between gates to make a connection to another flight. **Air France violated section 382.91(a) when it failed to provide timely wheelchair assistance to Mr. Eldeeb in Paris.**" (emphasis added). The DOT stated that Air France did not contest the violation. "Air France states that its failure to provide wheelchair assistance constitutes a violation of Part 382." Importantly, the DOT investigation sheet, which was also sent to Air France, stated that it is the carrier—*not the airport nor the third party contracted to provide wheelchair assistance*—that is responsible for ensuring its passengers are provided the necessary assistance:

> **As a carrier, you must provide or ensure the provision of assistance requested on or behalf of a passenger with a disability,** or offered by carrier or airport operator personnel and accepted by a passenger with a disability, in transportation between gates to make a connection to another flight. If the arriving flight or departing flight are operated by different carriers, the carrier that operated the arriving flight (i.e., the one that operates the first of the two flights that are connecting) is responsible for providing or ensuring the provision of assistance, even if the passenger holds a separate ticket for the departing flight. It is permissible for the two carriers to mutually agree that the carrier operating the departing flight connecting flight (i.e., the second flight of the two) will provide this assistance, but **the carrier operating the arriving flight remains responsible under this section for ensuring that the assistance is provided**.

(emphasis added) (Exhibit 6 to Attachment A).

In light of the admission from Air France and the DOT's unrefuted finding that Air France violated federal law in failing to provide wheelchair assistance to Plaintiff's father, no evidence from France is necessary. Defendants' allegation that "[e]xtensive testimonial and documentary evidence…including documents and witnesses" are located in France has no merit. (Doc. 21, p.

10). First, Defendants' blanket assertions are not supported by affidavit or *any* evidence at all. Second, Defendants fail to identify a single example of testimonial or documentary evidence they need from France which they can only obtain through dismissal of the suit from Plaintiff's and Defendant's home forum and refiling of the suit in France. Third, the relevant testimony and documents are within the possession and control of Defendants themselves. Delta has in its possession information as to Plaintiff's request for wheelchair assistance for her father. Air France has in its possession correspondence from the DOT that such assistance was not provided constituting a violation of the Air Carrier Access Act.

Strangely, Defendants allege that the action must be dismissed and refiled in France so that information can be obtained from Air France because such evidence is "beyond the Court's subpoena power[.]" (Doc. 21, p. 10). Defendants' contention is clearly erroneous. Air France is a Defendant to this action and therefore is subject to the jurisdiction of this Court. Defendant Air France has just as much obligation to produce information within its control—including employees for deposition and documents for review—in this action as does Defendant Delta. Defendants' vague and puzzling allegation that "[e]xtensive testimonial and documentary evidence is beyond this Court's subpoena power, including documents and witnesses relevant to the transfer of passengers between connecting flights in France, Air France (the actual carrier), ADP and its subcontractor Passerelle[3], and eyewitnesses" is smoke and mirrors. (Doc. 21, p. 10). Defendant Delta must have communicated the request for wheelchair assistance to Defendant Air France and Air France must have communicated the request to entities at the airport in Paris.

---

[3] Defendants provide no factual support in the form of affidavits or otherwise that ADP and Passerelle were the entities at the Paris Charles de Guaelle Airport contracted to provide wheelchair assistance. Plaintiff is forced to take Defendants' allegation at face-value without the opportunity to investigate the veracity of the allegation.

All such correspondence is assuredly in the possession of Defendants and presumably was reviewed by Air France prior to its responding to the DOT complaint. Defendants do not even attempt to explain how evidence related to the "configuration of this airport" and "the airport norms regarding transportation of wheelchair passengers" or testimony of the eyewitnesses (including the Good Samaritan that assisted Plaintiff's father to the restroom to clean up), French airport authorities, French airport and airline crewmembers who assisted Plaintiff's father are "crucial to its defense." (Doc. 21, p. 11-12). Further, Defendants have not provided any evidence or even allegations that they have identified the Good Samaritan or any other eyewitnesses. Again, any "airline crewmembers" are within the sole control of Air France and can be produced in this action.[4] Plaintiff is unclear as to who Defendants are referring to as "French airport authorities" and "French airport...crewmembers." Nonetheless, Defendants have failed to identify any such individuals or to allege that such individuals possess information relevant to Defendants' defenses. *See Gupta v. Austrian Airlines*, 211 F. Supp. 2d 1078, 1087 (N.D. Ill. 2002) (Failure to identify documents and witnesses located in the alternative forum weighs against dismissal). Finally, Defendants have failed to allege the inability to interplead third party defendants, such as ADP, and as such, that argument has been waived. *See United States v. Olano*, 507 U.S. 725 (1993).

### 5.    Defendants Do Not Prove That France Would Be Substantially More Convenient For Plaintiff.

The *forum non conveniens* analysis does not focus solely on Defendants' claims of inconvenience from Plaintiff's chosen forum. The Court also is to consider the inconvenience to plaintiffs from defendant's proposed alternative forum. *Lehman*, 713 F.2d at 343; *Founding*

---

[4] Defendants have not alleged an inability to make its own employees available for deposition in this Court as Defendants cannot reasonably due so in light of their role as Defendants in this action and the availability of technology which allows depositions to be taken remotely.

*Church of Scientology,* 536 F.2d at 343 (Court is to balance defendant's claims of inconvenience against the convenience to, and in fact the need of, plaintiffs for their chosen forum). Plaintiff is a citizen and resident of the U.S. with no connection to France. Plaintiff does not speak French and has never even traveled to France. (Attachment A, ¶19). Plaintiff's father had no connection to France. It was fortuitous that Plaintiff's father's flight had a layover in Paris. Plaintiff's father was not destined for Paris and had no expectation to spend any extended time in Paris.

Moreover, the location of the accident has no bearing on Defendants' liability. The DOT found that Air France had violated U.S. law by failing to provide the requested assistance. The DOT would have reached the same conclusion had the accident occurred in any other country where the requested wheelchair assistance was not provided. Whereas Defendants can ensure the testimony of its employees in a court in Minnesota, Plaintiff cannot ensure that she will be able to rely on the testimony of Plaintiff's father's treating physicians in a court in France. Plaintiff would be at a severe disadvantage litigating in a foreign forum without the ability to subpoena those physicians with knowledge of Plaintiff's father's pre-accident condition. Plaintiff acknowledges that physicians with knowledge of Plaintiff's father's post-accident condition are located in Egypt and are thus outside of the subpoena reach of this Court. However, the same would be true if this case were dismissed and refiled in France. Considering Defendants' superficial motion, the lack of the ability to compel the production of witnesses relevant to Plaintiff's damages in a French court must be the true motivation for Defendants' motion.

## C.   DEFENDANTS DO NOT PROVE THAT THE PUBLIC INTEREST FACTORS STRONGLY FAVOR FRANCE OUTWEIGHING THE INTEREST OF THE UNITED STATES

This is a Montreal Convention action brought by a U.S. Plaintiff on behalf of a U.S. citizen decedent against a U.S. carrier and a carrier that operates throughout the U.S. The U.S.

undoubtedly has an interest in ensuring that air carriers operating within its borders provide passengers with disabilities the assistance required by the Air Carrier Access Act and in providing remedy to its citizens that are denied the assistance required by U.S. federal law. *Reid-Walen v. Hansen*, 933 F.2d at 1400 ("The defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens."). This Court and the residents which make up the jury pool will not be substantially burdened by maintenance of this case in this Court. This case is a straightforward application of the Montreal Convention which prescribes certain liability on air carriers in the event that a passenger incurs damages as result of an accident. Plaintiff contends that proof of liability at trial will likely be unnecessary since Defendant Air France admitted to violation of the Air Carrier Access Act and cannot reasonably argue that violation of a federal statute prescribing the duty of care owed to passengers is not an unusual or unexpected event external to the passenger. Thus, the trial will likely only be on the issue of damages and will be expeditious.

Any interest that France might have in the resolution of this case certainly does not outweigh the significant interest of the U.S. in ensuring redress for U.S. citizens with disabilities denied assistance required by federal law of air carriers operating within the U.S. Like the incident in *Reid-Walen*, the accident here "was a simple, albeit tragic...accident that was not a newsworthy event or of broad public interest in [France]." 933 F.2d at 1400.

The Montreal Convention is an international treaty which this Court is just as competent to interpret and apply as a court sitting in France. However, the U.S. Court is surely in a better position to analyze the Air Carrier Access Act in the limited purview of identifying whether Defendants' actions constitute an accident in this case. Defendants' allegation that the Court will have to engage in complex choice of law analysis is perplexing. The governing law is the Montreal

Convention. Evidence of the domestic laws, like the Air Carrier Access Act are only relevant to the inquiry as to whether Plaintiff's damages are the result of an "accident" within the meaning of the Montreal Convention. However, European Union Regulation (EC) No. 1107/2006, cited by Defendants (Doc. 21, p. 15), cannot be said to apply to non-European Union carriers not operating in the European Union at the time of the accident, and thus would have no bearing on Defendant Delta's liability under the Montreal Convention.

Bafflingly, Defendants allege that French law will govern damages despite the fact that Plaintiff and Plaintiff's father are/were U.S. citizens and are not/were not French citizens or residents. Defendants assertion of the application of French damages law, without any legal citation, flies in the face of the plain language of the Montreal Convention providing that Defendants are strictly liable for damages up to the strict liability cap under the Convention and Plaintiff can prove damages under the law of Plaintiff's domicile in excess of the cap. *In re Air Crash at Little Rock Arkansas, on June 1, 1999*, 291 F.3d 503 (8th Cir. 2002) (applying the Warsaw Convention—the predecessor to the Montreal Convention).

## IV.   ARGUMENT – DEFENDANTS' MOTION TO DISMISS BASED ON FALURE TO JOIN ADP AS A PARTY MUST BE DENIED

Defendants acknowledge (and indeed argue in support) that Plaintiff's claim is governed by the Montreal Convention. Yet, Defendants move to dismiss Plaintiff's complaint based upon Plaintiff's alleged failure to join a French entity which is not an air carrier and thus is not subject to the Montreal Convention as a Defendant to the present action. Defendants' argument is that EU Regulation 1107/2006 places sole responsibility of providing wheelchair assistance on the airport and its contracted entities thereby relieving these Defendants of any liability under the Montreal Convention. Defendants cite no case law in support of its argument that EU regulations preempt the Montreal Convention in a court sitting in the U.S. or in France. Of course, such an argument

is illogical since the Montreal Convention is an international treaty and generally international treaties preempt conflicting domestic law. Defendants go on to argue that under the EU Regulation, an air carrier has no duty assist passengers with disabilities in embarking or disembarking from flights or traveling to the departure gate for the second leg of the itinerary. This argument is wholly contrary to the plain language of the Montreal Convention and the courts' interpretation of its provisions.

Article 17 of the Montreal Convention plainly states: "The carrier is liable for damages sustained in case of death or bodily injury of a passenger **upon condition only** that the accident which caused the death or injury took place on board the aircraft **or in the course of any of the operations of embarking or disembarking**." Montreal Convention, Ch. III, Art. 17. (emphasis added). EU Regulation No. 1107/2006 is entitled "concerning the rights of disabled persons and persons with reduced mobility when traveling by air." It does not concern the tort liability of an air carrier (nor an airport for that matter). Rather, it seeks to ensure that persons with disabilities do not suffer any undue hardship when traveling by air. This is reflected in the regulation itself which states:

> [D]isabled persons and persons with reduced mobility, whether caused by disability, age or any other factor, should have opportunities for air travel comparable to those of other citizens. Disabled persons and persons with reduced mobility have the same right as all other citizens to free movement, freedom of choice and non-discrimination. This applies to air travel as to other areas of life.

Regulation (EC) No 1107/2006 of the European Parliament and of the Council of 6 July 2006 Concerning the Rights of Disabled Persons and Persons with Reduced Mobility when Travelling by Air, para. 1.

Defendants argue that this regulation provides, contrary to the unequivocal language of the Montreal Convention, that air carriers owe no duty to passengers deboarding the aircraft in a

wheelchair. Perhaps Defendants infer this from Article 7 of the regulation which states, "When a disabled person or person with reduced mobility arrives at an airport for travel by air, the managing body of the airport shall be responsible for ensuring...assistance." However, nowhere in this regulation is there any language, like that in Articles 17 and 21 of the Convention, imposing a duty or tort liability upon the managing body of the airport for injuries sustained by a passenger in "ensuring" assistance. Rather, the regulation is concerned only with guaranteeing that that persons with disabilities in need of assistance are provided with such assistance.

Even if the EU regulation applies to the Paris airport and other French entities, this does not relieve Defendants of their strict liability under Articles 17 and 21 of the Montreal Convention. Under Article 17, the only condition for Defendants' liability is that Plaintiff's father suffered injuries from an accident which took place on board the aircraft or in the course of disembarking. That condition clearly is met here.

There is absolutely no language in this EU regulation which purports to relieve Defendants of their duty and liability under the Convention. It is black letter law that no statute or regulation may take precedence over an international treaty. Even if the airport owed a duty of care based upon this EU regulation, Defendants also owed a duty of care. Defendants, as common carriers, owed Plaintiff's father a heightened duty of care because of the special relationship between common carriers and their passengers. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. Fla. 2004); *Fillpot v. Midway Airlines*, 261 Ill. App. 3d 237, 242, 633 N.E.2d 237, 242 (4th Dist. 1994) (Airlines are common carriers which have a "duty to exercise the highest standard of care in protecting their passengers.").

Moreover, a finding that the EU regulation absolves Defendants of liability under the Montreal Convention would result in an unjust, unintended, and bizarre application of the law.

Such a finding would mean that an air carrier has no responsibility under the Montreal Convention for preventing injury to its passengers with disabilities so long as the passenger is deboarding in an airport in the European Union, instead of another signatory nation.

A person without disability who sustained an injury during disembarkment from an international flight at an airport located in the European Union would have a claim under the Montreal Convention, whereas a person with a disability disembarking at the very same airport from the very same flight would not because she deboarded the aircraft in a wheelchair. The EU specifically stated that the regulation was enacted in the interest of *protecting* persons with disabilities from unfair treatment and undue hardship. Application of its regulation in such a fashion would frustrate, rather than facilitate, that purpose and would violate the essence of the Montreal Convention.

Defendants only alleged that ADP is a necessary party because they argue the EU regulation applies such that ADP—a French entity with whom Plaintiff has never had any communication— was solely responsible for providing Plaintiff's father with the requested wheelchair assistance and Defendants—who Plaintiff made the travel arrangements with and the request for wheelchair assistance through—had absolutely no responsibility to ensure that request was fulfilled. As stated, the Montreal Convention and the EU regulation preclude such application. Further, as Defendants acknowledge, this Court could not assert personal jurisdiction over ADP. *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). Thus, Plaintiff could not join ADP to the present action even if Plaintiff were to pursue a cause of action against ADP. As a result, Defendants' motion to dismiss for failure to join ADP as a party to this action must be denied.

## V.   ARGUMENT – DEFENDANTS' MOTION TO DISMISS BASED ON FAILURE TO STATE A CLAIM UNDER THE MONTREAL CONVENTION MUST BE DENIED

Inexplicably, after arguing that EU regulations—and not the Montreal Convention—are the applicable law and relieve Defendants from *any* responsibility to provide wheelchair assistance to passengers with disabilities (Doc. 21, p. 16-19), Defendants state that **"the rights and liabilities of the parties are exclusively governed of [the Montreal] Convention."** (Doc. 21, p. 19-20) (emphasis added.) The allegations in Plaintiff's Amended Complaint are sufficient to allege a cause of action for the injury and resulting death of Plaintiff's father under the Montreal Convention.

In *Air France v. Saks*, the Supreme Court held that an "accident" is an "unexpected and unintended occurrence which produces hurt or loss." 470 U.S. at 398. Thus, liability is established where the "passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405. Since the definition of "accident" is still largely undefined, the Court explicitly held that "[t]his definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* On the other hand, the Court conclusively established under what circumstances an injury is not caused by an "accident," stating that "when the injury **indisputably** results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft[.]" *Id.* at 406 (emphasis added). Thus, "where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Id.* at 405.

Disembarking has not been precisely defined. However, the term signifies a "close temporal and spatial relationship with the flight itself." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 317 (1st Cir. 1995). The Court should consider the proximity of the accident to the deplaning. *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1361 (S.D. Fla. 2008). The *Day* test is used to determine

22

whether the plaintiff was disembarking, considering the following factors: (a) the activity the passenger was engaged in, (b) at whose direction or control, and (c) the location where the injury occurred. *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33 (2d Cir. 1975).

Plaintiff's father was irrefutably disembarking as all of the elements of the *Day* test for disembarking are met: (a) Plaintiff's father was engaged in the activity of disembarking from the first part of his itinerary to Cairo; (b) Plaintiff's father did so under the control of Air France as he was on an aircraft being operated by Air France and at the direction of Air France followed Air France's procedure for deboarding persons who required wheelchair assistance; and (c) Plaintiff's father's inability to mobilize occurred at the arrival gate of the accident flight. 528 F.2d at 33.

Defendant Air France's failure to ensure wheelchair assistance for Plaintiff's father despite Plaintiff requesting such assistance at the time of booking the itinerary with Defendant Delta is an unusual and unexpected event external to Plaintiff's father. *Air France v. Saks*, 470 U.S. at 392. An airline's failure to act can constitute an "accident" under the Montreal Convention. *Olympic Airways v. Husain,* 540 U.S. 644 (2004) (failure to move asthmatic passenger); *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68 (1st Cir. 2000) (failure to stop serving alcohol to passenger that subsequently injured another passenger); *Smith v. Am. Airlines, Inc.*, 2009 WL 3072449 (N.D. Cal. Sept. 22, 2009) (failure to secure overhead bin contents); *Prescod v. AMR, Inc.*, 383 F.3d 861 (9th Cir. 2004) (failure to timely return passenger's bag with asthma inhaler); *Maxwell v. Aer Lingus Ltd.*, 122 F. Supp. 2d 210 (D. Mass. 2000) (failure to adequately supervise storage in overhead bins); *Schneider v. Swiss Air Transp. Co.*, 686 F. Supp. 15 (D. Me. 1988) (failure to intervene when another passenger would not raise reclined seat); *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 673 (S.D.N.Y. 2001) (failure to divert flight when passenger was suffering heart

attack); *Buckwalter v. U.S. Airways, Inc.*, 2014 WL 116264 (E.D. Pa. Jan. 13, 2014) (failure to provide assistance during deboarding).

Defendants failed to meet the high standard necessary to warrant dismissal for failure to state a claim.[5] *Doe v. Norwest Bank Minnesota, N.A.*, 909 F. Supp. 668, 671 (D. Minn. 1995), *aff'd*, 107 F.3d 1297 (8th Cir. 1997). In considering Defendants' motion to dismiss based on failure to state a claim, "the Court presumes all factual allegations to be true and all reasonable inferences from those allegations are construed in favor of the non-moving party." *TCF Banking & Sav., F.A. v. Arthur Young & Co.,* 706 F. Supp. 1408, 1410 (D. Minn. 1988). At this early stage of litigation, the issue before the Court is not whether the Plaintiff will prevail at trial, but only whether she should be given the opportunity to present evidence in support of her claim. *Id.*

Dismissal of a plaintiff's complaint on such grounds is a harsh remedy disfavored by the courts and appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Id. quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (internal quotations omitted). Defendants have failed to prove that no set of facts exist under the circumstances alleged which would entitle Plaintiff to relief under the Montreal Convention. Plaintiff sufficiently alleged factual allegations in her Amended Complaint and has pointed to substantial case law from this District and this Circuit, as well as decisions of other courts, which supports her claim for relief under the circumstances. The allegations in Plaintiff's complaint are certainly sufficient to meet the federal notice pleading standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). Thus, Defendants' motion to dismiss on the basis of failure to state a claim must be denied.

---

[5] Defendants do not provide the Court with the standard for granting motions to dismiss predicated on failure to state a claim even though Defendants are seeking the extreme remedy of dismissal with prejudice.

## CONCLUSION

Plaintiff respectfully submits that for all the reasons set forth above, Defendants' motion to dismiss on the basis of *forum non conveniens*, failure to join a necessary party, and failure to state a claim upon which relief can be granted, must be denied.

Respectfully submitted,

Dated:  November 8, 2018

**ROBICHAUD, SCHROEPFER & CORREIA, P.A.**

By:___/s/ Robert A. Correia_____

Robert A. Correia (MN #397291)
1601 Hennepin Avenue, Suite 200
Minneapolis, Minnesota 55403
(612) 333-3343 Telephone
(612) 332-8166 Facsimile
robert@robichaudlaw.com

Dated:  November 8, 2018

**WISNER LAW FRIM, P.C.**

By:___/s/ Alexandra M. Wisner_____

Alexandra M. Wisner (IL #6317572)
*admitted pro hac vice*
514 West State Street, Suite 200
Geneva, Illinois 60134
(630) 262-9434 Telephone
(630) 262-1066 Facsimile
awisner@wisner-law.com